0423

Brenda Jones DRAWDY, Respondent, v. John Wesley DRAWDY, Appellant.
(328 S. E. (2d) 133)

Court of Appeals

See also 275 S. C. 76, 268 S. E. (2d) 30.

*John Wesley Drawdy,* Charleston, *pro se.*

*Jean L. Perrin,* Lexington, *for respondent.*

March 20, 1985.

GOOLSBY, Judge:

In this action for contempt, John Wesley Drawdy appeals from a family court order construing an earlier order requiring him to assign one life insurance policy to secure the payment of the lump sum alimony awarded to the respondent Brenda Jones Drawdy, his former wife. We affirm.

The issues on appeal relate to the evidence on which the family court based its interpretation of the prior order and to the refusal by the family court to admit certain testimony at the contempt hearing.

This action was commenced by the filing on June 14, 1982, of a rule to show cause and petition. Mrs. Drawdy sought to have Mr. Drawdy held in contempt of court for failure to assign to her an insurance policy adequate to secure the payment of the lump sum alimony awarded by the Honorable Alvin C. Biggs in an order dated August 7, 1981.

Judge Biggs awarded Mrs. Drawdy "$100,000 lump sum alimony to be paid over a 124-month period beginning September 5, 1981, through the Richland County Family Court at the rate of $806.46 per month plus three ... percent until paid." His order directed Mr. Drawdy to "assign one life insurance policy to Mrs. Drawdy to ensure payment of the lump sum alimony."

Mr. Drawdy thereafter assigned a policy to Mrs. Drawdy in the face amount of $20,000.

Mrs. Drawdy alleged in her petition that this "assignment [was] inadequate to secure and protect her interest in having [Mr. Drawdy] pay the entire lump sum award of alimony to her." In his answer, Mr. Drawdy alleged he was in compliance with the order.

On July 16, 1982, the Honorable David S. Baroody conducted a hearing to determine whether Mr. Drawdy was in contempt of Judge Biggs' order.

Judge Baroody found Mr. Drawdy not to be in contempt. He concluded, however, "that the clear intent of the Order of Judge Biggs was to ensure that ... [Mrs. Drawdy] receive the full amount of the lump sum alimony awarded her, and to that end to provide security for such payment by requiring her to be named as beneficiary in a policy of insurance upon the life of ... [Mr. Drawdy]." Judge Baroody further concluded that "[t]he amount of such policy [was] to equal at least the amount of alimony remaining to be paid."

Judge Baroody ordered Mr. Drawdy to secure a life insurance policy with Mrs. Drawdy as the named beneficiary in the face amount of $92,000, an amount that may decrease in proportion to the total balance owed. Judge Baroody alternatively directed Mr. Drawdy to secure a policy that, in the event of Mr. Drawdy's death, would continue to make monthly payments of the lump sum alimony to Mrs. Drawdy until the full amount had been paid.

None of Mr. Drawdy's three exceptions questions Judge Baroody's interpretation of Judge Biggs' order. Rather, Mr. Drawdy takes exception to Judge Baroody's reference to testimony from the record of the hearing before Judge Biggs concerning the face value of several life insurance policies owned by Mr. Drawdy in 1977, to Judge Baroody's refusal to permit Mr. Drawdy to testify concerning the policies he owned in October, 1980, when Judge biggs conducted a hearing in connection with the divorce proceedings, and to Judge Broody's refusal to allow Mr. Drawdy's expert witness to testify concerning the present value of the sum owned Mrs. Drawdy as lump sum alimony.

At the hearing before Judge Baroody, Mrs. Drawdy's attorney read from the record before Judge Biggs the following colloquy between Mr. Drawdy and Mrs. Drawdy's attorney:

> [Q.:] Now in 1977 you had life insurance policies in the amounts of roughly $412,000 did you not?
> [A.:] It is quite possible, yes.
> [Q.:] And those life insurance policies had a cash surrender value of approximately $11,500, did they not?
> [A.:] I would say so, yes.

Mr. Drawdy now contends that by October, 1980, some of these policies had lapsed and that when Judge Biggs issued his order on August 7, 1981, he had only two policies covering his life. One of these policies had a face value of $5,000. The other, which he assigned to Mrs. Drawdy, had a face value of $20,000. He argues the record does not show he had $412,000 in insurance in 1980 when he testified at the October, 1981, hearing and that Judge Baroody therefore erred in requiring him to ensure the payment of the lump sum alimony to Mrs. Drawdy by either securing a policy in an amount equal to the balance owed or securing a policy that would continue the lump sum

alimony payments until the full amount had been paid.

In construing any ambiguous language found in a prior order, a court should confine itself to the record upon which the order to be enforced is based. 46 Am. Jur. (2d) *Judgments* Section 76 at 364 (1969); 49 C. J. S. *Judgments* Section 436b at 867-68 (1947); *see Watkins v. Smith*, 40 N. C. App. 506, 253 S. E. (2d) 354 (1979). Judge Baroody did just that.

Nowhere in the record on which Judge Biggs based his order is there any evidence either that Mr. Drawdy did not own in October, 1980, the policies he testified to owning in 1977 or that the policies had lapsed. Expressed differently, there is no evidence in the record upon which Judge Biggs' order was based that Mr. Drawdy owned only the $5,000 and $20,000 policies in October, 1980. If there is any such evidence, Mr. Drawdy failed to call it to the attention of Judge Baroody and to include it in the record before this court.

Judge Baroody, therefore, committed no error in construing the language of Judge Biggs' prior order with reference to the evidence that in 1977 Mr. Drawdy had life insurance in the total face amount of $412,000. In the absence of evidence in the record to the contrary, it was not unreasonable for Judge Baroody to conclude that Mr. Drawdy owned in October, 1980, the life insurance he said he owned in 1977.

As to the refusal by Judge Baroody to permit Mr. Drawdy and his expert witness to testify, we again discern no error. The rule that "[a] judgment which is ambiguous ... should be read in connection with the entire record and construed accordingly" [46 Am. Jur. (2d) *Judgments* Section 76 at 364 (1969)] does not permit supplementation of the record by parol evidence. Although extrinsic evidence may be used to explain or supplement an ambiguous judgment, [*Id.* Section 72 at 363; 50 C. J. S. *Judgments* Section 863b at 439 (1947)] it may not be used to supplement the record on which the judgment is based. Accordingly, the order appealed from is

Affirmed.

BELL and CURETON, JJ., concur.