779 S.E.2d 826

John Steven GOODWIN, Louise C. Goodwin, Thomas I. Puckett, Brenda C. Puckett, Robert Nahama, Jeanne E. Nahama, Thomas Holland, Sharon Louise Holland, Joyce C. Sobel, Robert W. Waruszewski, Richard N. Taylor, Robert K. Spillers (a/k/a Robert Spillers), Deborah T. Spillers (a/k/a Deborah Spillers), Patrick A. DiAngelo, Deborah A. DiAngelo, Gary E. Owens, Joyce M. Owens, Fount L. Shults, Lynda M. Shults, Dennis Ridgeway, and Teresa Lynn Ridgeway, Plaintiffs, Of whom John Steven Goodwin, Louise C. Goodwin, Gary E. Owens, and Joyce M. Owens are the Appellants,

v.

LANDQUEST DEVELOPMENT, LLC, Kyle C. Corkum, South Bay Properties, LLC, C.R. Thompson and Sons, LLC, Ronald L. Charlton, Bonnie N. Charlton, James R. Charlton, Bayside Property, Inc., The City of Georgetown, Hartford Casualty Insurance Company, Hartford Fire Insurance Company, and National Land Sales, Inc., f/k/a Source One Communities, LLC, a/k/a Source One Signature Communities, Defendants,

Of whom Ronald L. Charlton, Bonnie N. Charlton, James R. Charlton, Bayside Property, Inc., The City of Georgetown, Hartford Casualty Insurance Company, and Hartford Fire Insurance Company are the Respondents.

Appellate Case No. 2013–001644.

No. 5342.

Court of Appeals of South Carolina.

Heard June 3, 2015.

Decided Aug. 12, 2015.

Rehearing Granted Dec. 16, 2015.

Withdrawn, Substituted and Refiled Dec. 16, 2015.

624

K. Douglas Thornton, of Conway, and John M. Leiter, Law Offices of John M. Leiter, PA, of Myrtle Beach, for appellants.

Charles T. Smith, of Georgetown, for respondents.

Ronald L. Charlton, Bonnie N. Charlton, James R. Charlton, and Bayside Property, Inc.; Andrew F. Lindemann, Davidson & Lindemann, PA, of Columbia, and Elise Freeman Crosby, Crosby Law Firm, LLC, of Georgetown, for respondent.

The City of Georgetown; Lawrence Michael Hershon and James Lynn Werner, Parker Poe Adams & Bernstein, LLP, both of Columbia, for respondents. Hartford Casualty Insurance Company and Hartford Fire Insurance Company.

FEW, C.J.:

John and Louise Goodwin and Gary and Joyce Owens appeal the circuit court's refusal to restore their case to the docket after it was "stricken" due to one defendant's bankruptcy. The circuit court denied the motion to restore the case on the ground the case was barred by the statute of limitations. We hold that because the Goodwins and Owenses complied with the statute of limitations when they initially filed and served the summons and complaint, it was not necessary for them to comply with the statute again when

they attempted to restore the case to the docket. We reverse and remand for further proceedings.

## I. Facts and Procedural History

In September 2007, Bonnie and Ronald Charlton and Bayside Property, Inc. sold a tract of land on Winyah Bay in the city of Georgetown to South Bay Properties, LLC for $20.85 million—$6.27 million in cash and a $14.58 million note secured by a mortgage. South Bay—a joint venture of Landquest Development, LLC, C.R. Thompson and Sons, LLC, and Kyle C. Corkum—planned to develop the property into a residential subdivision named the Harbor Club on Winyah Bay. Prior to construction, South Bay sold fifty-four lots—including one each to the Goodwins and Owenses—generating $14,737,600 in proceeds.

On July 9, 2009, after South Bay failed to build the basic infrastructure of the subdivision in a timely manner, the Goodwins and Owenses, along with other lot owners, filed this lawsuit ("lot owners' action") and recorded a lis pendens on the property still owned by South Bay. The record indicates the lawsuit was promptly served.

In June 2010, South Bay filed a petition for bankruptcy. The record reflects no further activity in the lot owners' action until it appeared on the trial roster for July 25, 2011. South Bay then filed a motion for a "continuance," relying on the "automatic stay" imposed under the federal bankruptcy code. See 11 U.S.C. § 362(a)(1) (2012) (discussed in section II. A. of this opinion). The circuit court granted South Bay's motion for a continuance, and in a separate Form 4, it ordered "Case Stricken Due To Bankruptcy." On August 12, 2011, the bankruptcy court dismissed South Bay's bankruptcy case.

In August 2012, the Charltons and Bayside filed an action to foreclose on the mortgage. They named as defendants any party that "may have or claim" an interest in the property, including the Goodwins and Owenses. The Goodwins and Owenses—without an attorney—filed answers that contained only a general denial of the allegations in the complaint. The Charltons and Bayside filed a motion for an order of reference to the master-in-equity.

On January 22, 2013, the Goodwins and Owenses—then represented by an attorney—filed two motions. The first was a motion to "Reinstate/Restore" seeking "an Order ... reinstating the [lot owners'] action to the active trial docket" and to consolidate the lot owners' action and the foreclosure suit. The second was a motion to amend their answers in the foreclosure suit to assert counterclaims and cross-claims seeking the same relief they sought in the lot owners' action.[1]

The circuit court denied the motion to restore the lot owners' action, ruling the Goodwins' and Owenses' claims were barred by the statute of limitations. As to consolidation, the circuit court stated, "Since restoration ... is denied, consolidation of this case ... is moot." In a separate order in the foreclosure suit, the circuit court referred that case to the master and declined to rule on the motion to amend. The Goodwins and Owenses filed motions to alter or amend both orders pursuant to Rule 59(e), SCRCP. In the foreclosure suit, they asked the circuit court to rescind the order of reference and repeated their request to amend their answers. After the master recused himself for unrelated reasons and returned the foreclosure suit to circuit court, the court entered orders denying the Rule 59(e) motions in both cases.[2]

## II. Motion to Restore

The Goodwins and Owenses argue the circuit court erred in denying their motion to restore on the grounds that their claims were barred by the statute of limitations. We agree.[3]

---

1. The cross-claims and counterclaims in the proposed amended answers in the foreclosure suit are nearly identical to the claims in the lot owners' action.

2. The Goodwins and Owenses interpreted the order in the foreclosure suit as denying their motion to amend. In a separate appeal in the foreclosure suit, we found the order did not deny the motion to amend and was not an immediately appealable order. We dismissed the other appeal and remanded for further proceedings.

3. Because this is a question of law, we review the circuit court's decision de novo. *See Lambries v. Saluda Cnty. Council,* 409 S.C. 1, 7, 760 S.E.2d 785, 788 (2014) (stating an appellate court "reviews questions of law de novo" (quoting *Town of Summerville v. City of N. Charleston,* 378 S.C. 107, 110, 662 S.E.2d 40, 41 (2008))).

The statute of limitations provides, "Civil actions may only be commenced within the periods prescribed in this title after the cause of action has accrued...." S.C.Code Ann. § 15–3–20(A) (2005). Thus, the statute of limitations applies to the date a lawsuit is "commenced." Rule 3(a) of the South Carolina Rules of Civil Procedure provides, "A civil action is commenced when the summons and complaint are filed with the clerk of court if: (1) the summons and complaint are served within the statute of limitations...." Section 15–3–530 of the South Carolina Code (2005) prescribes the limitations period for this case as three years. The Goodwins and Owenses complied with the statute of limitations in 2009 when they filed the summons and complaint and served them on the defendants within the three-year limitations period. Thus, the circuit court erred by finding the lawsuit barred by the statute of limitations.

The respondents argue, however, the Goodwins and Owenses did not comply with the tolling provisions of 11 U.S.C. § 108(c) (2012) and Rule 40(j) of the South Carolina Rules of Civil Procedure. As we will explain, because the lawsuit had already been commenced, there was nothing to toll. Therefore, the tolling provisions are irrelevant.

## A. 11 U.S.C. § 108(c)

The filing of a petition for bankruptcy by a defendant in a state civil proceeding invokes 11 U.S.C. § 362(a)(1). Section 362 is entitled "Automatic stay," and provides the filing of the petition "operates as a stay . . . of . . . the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor." § 362(a)(1). This automatic stay prevents a state court from proceeding with the action while the stay is in effect. Under 11 U.S.C. § 362(c)(2)(B) (2012), "the stay . . . continues until . . . the [bankruptcy] case is dismissed."

Our rules of procedure do not address how a circuit court must deal with the automatic stay. However, neither our rules nor 11 U.S.C. § 362 require the dismissal of the action. Here, the circuit court did not dismiss the action. The circuit court employed a Form 4 order provided by our supreme court that contains various boxes for the court to check to

indicate the effect of the order.[4]   The form includes boxes for the dismissal of an action and the reason for the dismissal, but the court did not check the dismissal boxes in this order. Rather, the circuit court checked the box labeled "ACTION STRICKEN," and as a reason for striking, the box labeled "Bankruptcy."   In the portion of the form provided for text, the circuit court wrote, "Case Stricken Due To Bankruptcy."

■   In deciding not to restore the case to the docket, the circuit court relied on 11 U.S.C. § 108(c), which states,

[I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, . . . and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or (2) 30 days after notice of the termination or expiration of the stay.

The circuit court incorrectly concluded section 108(c) has any application to this case.   By its terms, the subsection tolls "a [time] period for commencing or continuing a civil action" when the time period is "fixe[d]" by (1) "applicable nonbankruptcy law," (2) "an order," or (3) "an agreement."   Here, there is no order or agreement fixing any period of time for restoring the lawsuit, and the only "law" the respondents contend is applicable is the statute of limitations.   However, the Goodwins and Owenses commenced the lot owners' action, and thus complied with the statute of limitations, before the automatic stay took effect.   Under these circumstances, the statute of limitations was no longer an "applicable nonbank-

---

4.  *See* Rule 84, SCRCP ("The Supreme Court shall prescribe the content and format of forms required by these rules.").   By order dated June 24, 2008, the supreme court approved the form used by the circuit court in this case.   *See* Order re:  Form 4, Judgment in a Civil Case, No. 2008–06–24–01 (S.C. Sup. Ct. filed June 24, 2008), *available at* http:// www.sccourts.org/courtOrders/displayOrder.cfm?orderNo=2008–06– 24–01 (last visited August 7, 2015).   The Form 4 form has subsequently been revised.   *See* Order re:  Judgment in a Civil Case Form (SCRCP Form 4C), No. 2013–03–26–01 (S.C. Sup. Ct. filed Mar. 26, 2013), *available at* http://www.sccourts.org/courtOrders/displayOrder.cfm? orderNo=2013–03–26–01 (last visited August 7, 2015).

ruptcy law" that "fixe[d] a period for commencing or continuing a civil action." [5] Therefore, the tolling provision in section 108(c) is irrelevant in this case.

## B. Rule 40(j), SCRCP

The circuit court also relied on Rule 40(j) of the South Carolina Rules of Civil Procedure. We find the court erred in relying on this rule for several reasons. First, the lot owners' action was stricken due to bankruptcy, not pursuant to Rule 40(j). Second, even if Rule 40(j) was at issue, the rule does not set a deadline for restoring a case. As our supreme court has explained,

> Rule 40(j) does not *require* that a party move to restore the case to the docket within one year after it was stricken. Instead, the unambiguous language provides that, *if* the claim is restored within one year after it is stricken, the statute of limitations is tolled for that period.... A party can move to restore a case to the docket more than one year after the claim was stricken without running afoul of Rule 40(j); the party simply cannot take advantage of the one year tolling period provided by the rule.

*Maxwell v. Genez*, 356 S.C. 617, 620–21, 591 S.E.2d 26, 28 (2003).

Under Rule 40(j), therefore, the applicable deadline remains the statute of limitations. The effect of the rule is not to set a new deadline, but to extend the statute of limitations' deadline by applying the rule's tolling provision when the motion to restore is made within a year. Because the Goodwins and Owenses commenced the lawsuit within the statute of limitations, there was nothing to toll and they did not need the tolling provision in Rule 40(j).

Third, the requirement of complying with the statute of limitations after a case is stricken pursuant to Rule 40(j) depends on the event of "striking" being considered a dismissal. While our rules do not clearly provide that striking a case pursuant to Rule 40(j) is a dismissal, there is a basis in our law

---

**5.** 11 U.S.C. § 108(c) is applicable to a situation where the automatic stay has prevented the commencement of a lawsuit before the statute of limitations expires, or where a law, order, or agreement otherwise sets some time limit for "commencing or continuing" a lawsuit.

for considering a case stricken pursuant to the rule as the equivalent of dismissed. In the notes to the 1994 amendments to the South Carolina Rules of Civil Procedure, Rule 40(j) is described as "substantially revis[ing] the procedure for *dismissing* a case previously found in Rule 40(c)(3)." Rule 40, SCRCP Notes, Notes to 1994 Amendments (emphasis added). The notes go on to state, "Rule 40(j) now requires all adverse parties to consent to the dismissal in writing, but, the consent also operates to toll the statute of limitations for one year after the case is stricken.... Any remaining portion of the statute of limitations begins to run one year after the case was stricken unless the case has previously been restored...." *Id.;* see also *Maxwell,* 356 S.C. at 621, 591 S.E.2d at 28 (relying on the notes in interpreting Rule 40(j)).

Moreover, the tolling period would not be necessary if striking the case pursuant to Rule 40(j) were not the equivalent of a dismissal. *See Maxwell,* 356 S.C. at 620, 591 S.E.2d at 27 ("In interpreting the meaning of the South Carolina Rules of Civil Procedure, the Court applies the same rules of construction used to interpret statutes."); *State v. Sweat,* 386 S.C. 339, 351, 688 S.E.2d 569, 575 (2010) ("A statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous."); *Nucor Steel, a Div. of Nucor Corp. v. S.C. Pub. Serv. Comm'n,* 310 S.C. 539, 545, 426 S.E.2d 319, 323 (1992) ("[W]here possible, all provisions of a statute must be given full force and effect.").

There is also an historical basis for considering a case stricken pursuant to Rule 40(j) as the equivalent of dismissed. We adopted our Rules of Civil Procedure in 1985. *See* Rule 86(a), SCRCP ("These rules shall take effect on July 1, 1985."). Before then, the circuit court had the power to dismiss an action without prejudice if it was called for trial and the parties were not ready to proceed. *See Small v. Mungo,* 254 S.C. 438, 441, 443, 175 S.E.2d 802, 803, 804 (1970) (holding the inability of counsel "to contact plaintiff and his witnesses and be ready for trial" and "the failure of plaintiff and his counsel to appear when the case was called for trial constituted a failure to proceed with the cause ... and a ground for dismissal of the action"). When the supreme court decided *Small,* former Circuit Court Rule 81 was in effect. The rule provided, "When a case is reached on the Common Pleas trial

roster and is called for trial, . . . if counsel are not ready to go forward with the case it shall be placed . . . at the foot of the Calendar." S.C. Code Ann. vol. 22, Circuit Court Rule 81 (Supp. 1984) (repealed 1985). In 1985, former Rule 40(c)(3), SCRCP, took effect. Similar to the procedure described in *Small*, Rule 40(c)(3) applied only if the parties were not prepared to proceed when the case was called for trial. However, the rule allowed the circuit court to "strike" the action. The rule provided:

> When an action is reached on the trial roster and is called for trial, it shall not be continued by consent, and if counsel are not ready to go forward the court shall strike the action from the calendar (file book) with leave to restore, unless continuance is granted for good cause shown.

Rule 40(c)(3), SCRCP (West 1994) (repealed 1995).

The rule did not use the word "dismissed," but tracking the language of former Circuit Court Rule 81, it did require a restored case to "be placed at the foot of the calendar (file book) and a new case number assigned." Rule 40(c)(3); *see* Rule 40(c)(3), Notes ("This Rule 40 is substantially a compendium of present Circuit Court Rules. . . ."). Our law treated the striking of a case pursuant to Rule 40(c)(3) as the equivalent of a dismissal,[6] and our courts required the plaintiff to comply with the statute of limitations upon restoring the case. *See Graham v. Dorchester Cnty. Sch. Dist.*, 339 S.C. 121, 122, 125 n. 1, 528 S.E.2d 80, 81, 82 n. 1 (Ct.App.2000) (stating in a case "struck . . . from the trial roster . . . pursuant to former Rule 40(c)(3), SCRCP" that "the statute of limitations clearly expired" before the motion to restore was filed). *But see Robinson v. J.F. Cleckley & Co.*, 751 F.Supp. 100, 105 (D.S.C. 1990) (stating for purposes of calculating timely removal pursuant to 28 U.S.C. § 1446(b) (2012), "an action which has been removed from the docket pursuant to [Rule] 40(c)(3) is pending while it is off of the docket" and is not "commenced when it is restored to the calendar").

There is no such basis in our law, however, for considering the striking of a case due to bankruptcy as a dismissal. In fact, the striking of a case from the docket due to bankruptcy

---

6. *See* Rule 40, SCRCP Notes, Notes to 1994 Amendments (referring to "the procedure for dismissing a case previously found in Rule 40(c)(3)").

is not mentioned in our rules at all. In practice, our courts have treated the striking of a case due to bankruptcy as not being a dismissal. For example, in an "Administrative Order" dated May 4, 1988, then Chief Justice Gregory provided, "I . . . find that if a common pleas case is struck from the calendar (file book) due to bankruptcy and later restored, it should be restored at its original place on the calendar (file book), without the payment of an additional filing fee." *See* Administrative Order, No. 1988–05–04–01 (S.C. Sup. Ct. filed May 4, 1988), *available at* http://www.sccourts.org/court Orders/displayOrder.cfm?orderNo=1988–05–04–01 (last visited August 7, 2015).

We acknowledge the Form 4 uses the term "stricken"—the same term that equates to "dismissed" under Rule 40(j). However, while the forms are provided for in the Rules, *see* Rule 84, SCRCP, and are designed to assist courts to carry out the Rules, the forms themselves are not the law. *See* *Robinson*, 751 F.Supp. at 105 (stating "this court would be remiss if we allowed administrative laws . . . to dictate important procedural rights").

It is also important to note that striking a case pursuant to Rule 40(j) may be done only by consent. *See* Rule 40(j), SCRCP (providing the party asserting a claim may strike it only when "all parties adverse to that claim . . . agree in writing that it may be stricken"). To the contrary, many cases are stricken due to bankruptcy whether the parties consent or not. In this case, for example, the record contains no indication the case was stricken with the consent of the Goodwins or Owenses. In fact, it appears the circuit court entered the order striking the case on its own initiative, with no prior notice to the parties.[7] To consider the striking of this case—or any case where the automatic stay applies—as a dismissal without the consent of the party making the claim would conflict with Rule 41(b), SCRCP, which provides limited

---

7. The only motion in our record that mentions South Bay's bankruptcy is South Bay's motion for a continuance, which recites the "consent of all parties." However, the motion does not request striking the action. In the Goodwins' and Owenses' Rule 59(e) motion, they indicate they did not consent to striking the case, stating, "The case was struck either at the request of South Bay . . . or on the Court's own initiative."

circumstances in which an action may be dismissed involuntarily.[8]

For these reasons, we find the tolling provision of Rule 40(j) is irrelevant in a case stricken due to bankruptcy.

## C.   Petition for Rehearing

Several respondents [9] filed a petition for rehearing in which they contend this court's opinion contains factual inaccuracies. Because this is an interlocutory appeal, there are no factual findings below, and our description of the facts is based on the parties' allegations—primarily those of the Goodwins and Owenses. Nevertheless, we have carefully reviewed the record, and we believe our opinion provides an accurate factual context in which to address the legal issue that resolves this appeal. The key fact is that the Goodwins and Owenses commenced this lawsuit within three years of the date their causes of action accrued.

These respondents also go to great lengths in their petition for rehearing to demonstrate that the Goodwins and Owenses waited an unreasonable length of time after the bankruptcy case was dismissed before moving to restore this case to the docket. However, our decision does not depend on the reasonableness of the Goodwins' and the Owens's conduct. Our decision rests entirely on the key fact—they commenced their action within the statute of limitations—and the legal principle that after doing so they did not have to comply with the statute of limitations again simply because the case was stricken due to bankruptcy. We specifically do not address whether the delay in restoring the case provides the circuit court some other basis on which to dismiss the case, such as failure to prosecute or an equitable theory such as laches. We hold simply that the striking of a case from the docket due to

---

**8.** *See also* Rule 79(f), SCRCP ("No action listed in the file book . . . shall be . . . stricken . . . unless and until: (1) plaintiff shall file and serve a notice . . . or stipulation of dismissal . . .; or (2) counsel . . . have prepared and filed an order . . . bearing the written consent of all interested parties . . .; or (3) dismissal is ordered by the court."). None of those events occurred in this case.

**9.** Landquest Development, LLC; Kyle C. Corkum; South Bay Properties, LLC; Ronald L. Charlton; Bonnie N. Charlton; James R. Charlton; and Bayside Property, Inc.

bankruptcy does not require the plaintiff to comply with the statute of limitations again upon making a motion to restore.

## III.  Conclusion

We **REVERSE** the denial of the Goodwins' and Owenses' motion to restore the case and **REMAND** for further proceedings.  Because our resolution of the issues discussed above is dispositive of the appeal, we do not address the Goodwins' and Owenses' remaining arguments.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (An "appellate court need not address remaining issues when disposition of prior issue is dispositive").

HUFF and WILLIAMS, JJ., concur.